1806.

BELDEN
*v.*
EDWARDS.

place after the commission of the act of bankruptcy on which the commission issued. If it is not shewn when that act was committed, it is impossible to shew what conveyances were made subsequent, and what prior, thereto. It is not contended, that witnesses could testify to any other act of bankruptcy than that on which the commission issued ; but as that act is not specifically pointed out in the commission, or the declaration of the commissioners, the earliest act within six months of the date of the petition may be, and it is presumed is, that, upon which the commission issued.

BY THE COURT, HILLHOUSE, AUSTIN, and GRISWOLD, *Assts.* dissenting,

The judgment was affirmed.

## Young *v.* Kenyon.

In the Court below,

PHILIP KENYON, *Plaintiff*; WILLIAM YOUNG, *Defendant.*

THIS was an action of *assumpsit.*

The declaration contained three counts.

Where the record of a judgment is of a term generally, and it becomes material to the rights of the parties to ascertain the particular day on which it was rendered, it may be shewn by evidence *aliunde.*

Whether an action of *assumpsit* will lie to recover back the purchase money of real estate, where such money was obtained by false and fraudulent representations as to *title?*—Whether such representations constitute a sufficient consideration to support an express promise ?—Whether after verdict a consideration will be presumed sufficient to support the promise found ?

The first stated, " That the defendant received of the " plaintiff the sum of two hundred dollars, upon a pretend- " ed sale, by the defendant to the plaintiff, of certain lands " in a pretended town of *Young*, in the Connecticut first " Delaware Purchase, by the defendant so called, and of " which lands the defendant executed an instrument, pur-

" porting to be a quit-claim deed, to the plaintiff, dated, &c.
" in and by which, the defendant acknowledged the receipt
" of said two hundred dollars." It was then averred, " That
" said sum of two hundred dollars was unduly and unjustly
" extorted and obtained, by the defendant, of the plaintiff, by
" false, deceitful, and unfair representations of the defendant
" to the plaintiff, that the said deed would ensure to the
" plaintiff a good title to said lands therein described ; and
" by the defendant's availing himself of the ignorance of
" the plaintiff of the true situation of said lands, and the
" title thereto ; by means whereof, the defendant became
" indebted to the plaintiff in the said sum of two hundred
" dollars, and liable, by law, to repay and refund the same
" to the plaintiff ; and being so liable, in consideration there-
" of, assumed and promised," &c.

The second count stated, " That the defendant became
" indebted to the plaintiff in the sum of one hundred and
" eighty dollars, for one stud horse, said sum being the
" price agreed on, between the plaintiff and defendant, for
" said horse ; which horse the defendant artfully and deceit-
" fully obtained of the plaintiff, by means of a pretended
" sale of lands in the Connecticut first Delaware Purchase,
" by the defendant so called, and to convey which, the de-
" fendant executed to the plaintiff a certain instrument, pur-
" porting to be a deed of quit-claim, dated, &c. That the
" defendant had no title to said lands, but procured the
" plaintiff to receive a deed of the same, by cunning and
" deceit, availing himself of the plaintiff's ignorance, and
" suppressing material facts within his own knowledge ;
" whereupon the defendant became indebted to the plaintiff
" for said horse, and liable to pay to the plaintiff the said
" sum of one hundred and eighty dollars, the price of said
" horse, agreed on as aforesaid ; and in consideration there-
" of, the defendant assumed and promised," &c.

The third count stated, " That the defendant became in-
" debted to the plaintiff for one stud horse, previously sold

1806.

YOUNG
*v.*
KENYON.

" and delivered, as much as said horse was reasonably
" worth ; that said horse was well worth one hundred and
" eighty dollars, which the defendant, by fraud and deceit,
" availing himself of the ignorance of the plaintiff, and
" concealing his own knowledge, obtained of the plaintiff,
" upon no other consideration than a pretended deed of quit-
" claim of certain lands in the Connecticut first Delaware Pur-
" chase, by the defendant so called, dated, &c. to which lands
" the defendant had no title, and which he represented to
" the plaintiff to be good, and that said lands would be held
" in virtue of said deed ;—and thereupon the defendant as-
" sumed and promised," &c.

The general issue was pleaded ; and a verdict found for
the plaintiff.

The error assigned was the insufficiency of the decla-
ration.

The defendant in error pleaded the statute of limita-
tions (*a*) in abatement of the writ of error, alleging, that the
judgment complained of was rendered by the Superior
Court, held on the first Tuesday of January, 1803, and that
the writ of error was not brought or served, until the 17th
of January, 1806 ; and that more than three years [the
time limited by statute] had elapsed from the rendering of
the judgment before the bringing of the writ of error.

The plaintiff in error replied, that the term of the Su-
perior Court, at which the judgment complained of was
rendered, continued from the first Tuesday of January, 1803,
until the 22d of the same month, and that the judgment
was rendered on the 15th day of the term, being the 19th of
the month ; from which time, three years had not elapsed
before the impetration and service of the writ of error.

The defendant rejoined, that the judgment was given on

(*a*) *Stat.* 161, 162, *edit.* 1796.

the first Tuesday of January, 1803, and more than three years before the impetration and service of the writ of error; and tendered an issue. This being joined, he produced the record entitled as follows : " At a Superior Court, holden in " and for the County of Windham, on the first Tuesday in " January, (being the 4th day) *Anno Domini*, 1803. Said " Court was opened on said 4th day, and adjourned on the " 22d day of said January, without day."

The plaintiff in error then offered evidence *aliunde* to prove, that the judgment was, in fact, rendered on the 19th of January.

*Goddard*, for the defendant in error, objected to the admission of such evidence. A term of a court, in contemplation of law, consists of but one day ; and all judgments rendered during the term are to be considered as having been rendered on the day, on which the term commenced. This is the general doctrine, which pervades the books. It is too late now to consider, whether that which has, at all times, been law, shall continue to be law. Even the death of the defendant before judgment actually signed, will not prevent its relation back to the first day of the term. (*b*)

The *record* is, that the judgment was rendered at a Court holden on the first Tuesday of January. The certificate of the clerk, of the time when the Court opened and adjourned, is no part of the record. It is merely evidence, and is to have no effect, until it has been decided, that evidence may be admitted to explain the record.

The *form* of the record, which has been long established, in this State, shews, that the English law is considered as law here. The record always states, as this does, that the court was holden on the day, on which the term commenced.

(*b*) 7 *Term Rep.* 20, *Bragner* v. *Langmead.* 2 *Stra.* 882, *Fuller* v. *Jocelyn.* 14 *Vin. Abr.* 616.

1806.

YOUNG
*v.*
KENYON.

It would be very unsafe to permit the supposed deficiences of *records* to be supplied by parol evidence.

*R. Griswold,* contra.

The evidence offered does not contradict the record. The one is perfectly consistent with the other. The record itself cannot be varied by parol ; but a matter of fact connected with the record may be thus proved. The appearance of the defendant, being matter of record, must be proved by the record ; but if the question be, whether he appeared *on a certain day,* that shall be tried by the jury. (c) So, in the case of bankruptcy, where the declaration is general, evidence *aliunde* is admissible, to shew the precise time, when the act was committed. But we are not obliged to resort to analogous cases. The very point in controversy was decided in *Johnson* v. *Smith.* (d) There the statute of limitations was pleaded. The fiction of law, that a *latitat* sued out in vacation bears teste as of the last day of the preceding term, was insisted on. But it was decided, that the party should not be bound by this artificial reference to the last day of the term, but might shew the true time when the process was sued out. Fictions of law, introduced for the sake of justice, are never allowed to deprive a party of a right, or to work a wrong, contrary to the truth and substance of the thing. The fiction relied upon, in this case, if adopted at all by our courts, has never been held to preclude inquiry as to the particular day of the term, on which judgment was rendered, where it became material to ascertain the day. Suppose an offence committed during the term. Could not the offender be prosecuted immediately before that court ? But if judgment is to bear date conclusively as of the first day of the term, it would be void, because rendered before the offence was committed.

THE COURT unanimously admitted the evidence ; and thereupon found the issue in favour of the plaintiff in error.

(c) *'Esp. Dig.* 741, *Dub. ed.* cites *Hoe* v. *Marshall, Cro. Eliz.* 131.
(d) 2 *Burr.* 962.

On the merits, *Griswold*, for the plaintiff in error, contended, that an action of *assumpsit* would not lie against the vendor of real estate, to recover back the purchase money, on the ground of a defect in the title. In all cases of the sale of land, the purchaser's remedy must be upon his covenants. If he takes a *quit-claim*, the presumption, and the inference of law, is, that he takes the risk of title upon himself. It has recently been decided, by this Court, that an action on the case for deceit in the sale of lands as to situation and quality, will not lie. (*e*) There is less reason to support an action of *assumpsit*, to recover back the purchase money, where there is a defect, or failure, of title, which every man may provide against, by requiring covenants of warranty.

In this case, *Kenyon* paid his money in consideration of receiving a certain quit-claim deed. Such a deed he, in fact, received. He received the consideration stipulated; and one, which, at the the time, was satisfactory.

*Goddard* for the defendant in error, contended, that if money be obtained by deceit, or *mala fide*, it may be recovered back in this action. The whole transaction, on the part of *Young*, is stated to have been a contrivance to get the money or property of *Kenyon*, without consideration. The shape, in which he practised the fraud, cannot affect his liability to refund.

The decision in *Sherwood* v. *Salmon* does not bear upon this case. Of the *quality* and *situation* of land, every man may judge for himself; but it is not so, as to *title*. Besides, it is not averred, in this case, that there was an *actual sale*, but a *pretended* sale only; the land itself did not exist; the township was a *pretended* one; in short, it was all a pretence—a contrivance to extort money.

But with whatever success the defendant's liability might

(*e*) *Ante, p.* 128. *Sherwood* v. *Salmon.*

K k

1806.

YOUNG
*v.*
KENYON.

have been controverted before the jury, it is now too late to make the question. The *promise* has been found by the verdict. That verdict, we are to presume, was given upon legal and sufficient evidence. If the facts detailed in the record do not constitute a liability implying the promise found, the legal presumption is, that it was expressly proved.

If it be said, that a *consideration* for the promise must be stated, I answer, in the first place, that the defendant below was, at least, under a moral obligation to refund the money ; and that was a sufficient consideration for the promise. In the next place, a consideration will be presumed, after verdict, if a consideration was necessary to support the promise. (*f*)

BY THE COURT,

The judgment was affirmed.

(*f*) 7 *Term Rep.* 351, *Rann* v. *Hughes.*